**BROWN KWON & LAM LLP**
Angela Kwon, Esq. (AK1396)
William Brown, Esq. (WB6828)
275 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
akwon@bkllawyers.com
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **SALLY JEREZ,** |  |
| **Plaintiff,** |  |
|  | **Case No.: 20-cv-5875 (MKB)(RML)** |
| **v.** |  |
| **GOODWILL INDUSTRIES OF GREATER NEW YORK AND NORTHERN NEW JERSEY, INC., and THE CITY OF NEW YORK,** | **SECOND AMENDED COMPLAINT** |
| **Defendants.** |  |

Plaintiff Sally Jerez ("Plaintiff"), by and through her undersigned attorneys, hereby files this Second Amended Complaint against Goodwill Industries of Greater New York and Northern New Jersey, Inc. ("Goodwill Defendant") and the City of New York ("City Defendant," and together with Goodwill Defendant, "Defendants") and alleges as follows:

**INTRODUCTION**

1. Plaintiff alleges, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and Americans with Disabilities Act ("ADA"), that Goodwill Defendant engaged in discrimination and retaliation against Plaintiff on the basis of sex and disability, and for asserting her rights to be free from discrimination including harassment. Plaintiff

seeks declaratory, injunctive and equitable relief, and monetary damages, including (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Defendants engaged in discrimination and retaliation against Plaintiff on the basis of sex and disability, and for asserting her rights to be free from discrimination including harassment. Plaintiff seeks declaratory, injunctive and equitable relief, and monetary damages, including (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

3.      Plaintiff also brings this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), seeking from City Defendant: (1) unpaid wages due to time-shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

4.      Plaintiff also brings this action pursuant to the New York Labor Law ("NYLL") Article 6 §§ 190 *et seq*., and Article 19 §§ 650 *et seq*., the supporting New York State Department of Labor Regulations, seeking from Goodwill Defendant: (1) unpaid wages due to time-shaving, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

6.      This Court has supplemental jurisdiction over Plaintiff's state and local law claims pursuant to 28 U.S.C. § 1367. Plaintiff's federal, state and local law claims against City Defendant and Goodwill Defendant arise out of the same or substantially similar events and circumstances that give rise to Plaintiff's federal, state and local law claims against Goodwill Defendant.

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Sally Jerez*

8. Plaintiff Sally Jerez is a female adult who resides in Queens County, New York.

9. Plaintiff was employed by Defendants and, at all relevant times, met the definition of an "employee" under the applicable laws.

10. Plaintiff retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

### *Goodwill Industries of Greater New York and Northern New Jersey, Inc.*

11. Goodwill Industries of Greater New York and Northern New Jersey, Inc. is a domestic not-for-profit corporation organized under the laws of the State of New York with a principal place of operation and an address for service of process located at 4-21 27th Avenue, Astoria, NY 11102.

12. At all relevant times, Goodwill Defendant operated its organization under the name Goodwill Industries of Greater New York and Northern New Jersey (hereinafter, "Goodwill Industries").

13. Goodwill Defendant employed Plaintiff and, at all relevant times, met the definition of an "employer" under the applicable laws.

14. At all relevant times, Goodwill Defendant maintained control, oversight, and direction over the terms and condition of Plaintiff's employment, including, but not limited to,

hiring, firing, work assignments, work schedules, payroll, timekeeping, and other employment practices.

15.     At all relevant times, Goodwill Defendant had the power to prevent or stop any unlawful policies and practices alleged herein.

16.     At all relevant times, Goodwill Defendant had the power to maintain employment records, including personnel files, time records, and pay records, of Plaintiff.

### *The City of New York*

17.     The City of New York is a municipal corporation organized under the laws of the State and City of New York.

18.     Pursuant to N.Y.C. Charter § 396, the City of New York is a judicial entity amenable to suit and the proper Defendant in this action.

19.     City Defendant employed Plaintiff and, at all relevant times, met the definition of an "employer" under the applicable laws.

20.     At all relevant times, City Defendant maintained control, oversight, and direction over the terms and condition of Plaintiff's employment, including, but not limited to, hiring, firing, work assignments, work schedules, payroll, timekeeping, and other employment practices.

21.     At all relevant times, City Defendant had the power to prevent or stop any unlawful policies and practices alleged herein.

22.     At all relevant times, City Defendant had the power to maintain employment records, including personnel files, time records, and pay records, of Plaintiff.

## ADMINISTRATIVE PROCEDURES

23.     Plaintiff has complied with any and all other prerequisites to filing this action.

24.     Plaintiff has exhausted the administrative requirement under the ADA and Title VII of filing a charge with the Equal Employment Opportunity Commission ("EEOC"). On or about October 30, 2019, Plaintiff filed a Charge of Discrimination against Goodwill Defendant with the EEOC. On or about September 2, 2020, the EEOC issued a Notice of Right to Sue, which is attached hereto as **Exhibit A**. The instant lawsuit was initiated within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

### HARASSMENT, DISCRIMINATION AND RETALIATION

25.     Plaintiff Sally Jerez is a female with a disability as defined by the Americans with Disabilities Act, namely, panic disorder and attention deficit hyperactivity disorder. Ms. Jerez's disabilities significantly impair her ability to engage in one or more life functions, including work.

26.     In or around May 2016, Ms. Jerez registered as a disabled individual in Goodwill Industries' Affirmative Action Program.

27.     Goodwill Industries' Affirmative Action Program places disabled individuals like Ms. Jerez in employment with one of the Program's partner organizations.

28.     On or around September 26, 2016, Ms. Jerez provided medical documentation to Goodwill Industries to substantiate her disabilities and was accepted into the Affirmative Action Program based on her disabilities.

29.     On or around December 8, 2016, Goodwill Industries, through its Affirmative Action Program, placed Ms. Jerez in a job as a Junior Administrative Assistant with the New York City Human Resources Administration ("HRA"), where she continuously worked for nearly three years until October 25, 2019.

30.     Ms. Jerez was well-qualified for her position as a Junior Administrative Assistant and performed her duties without any reprimand or discipline throughout her employment with HRA. In fact, she consistently received positive reviews and compliments for her job performance and work ethic.

31.     In or around September 2018, Ms. Jerez's male co-worker, Manuel Soto, began to harass Ms. Jerez on a continuous basis by repeatedly visiting Ms. Jerez at her cubicle without reason, invading Ms. Jerez's personal space (e.g., physically sitting or standing close to her in her cubicle), staring at her, looking at Ms. Jerez up and down, and asking her personal questions.

32.     Based on information and belief, Mr. Soto had also been placed with HRA as an executive assistant through the Goodwill Industries' Affirmative Action Program.

33.     Mr. Soto's repeated, intrusive questions and acts made Ms. Jerez feel extremely uncomfortable and anxious. In fact, Mr. Soto's harassment triggered Ms. Jerez's disability, and she began to suffer panic attacks caused by his unwanted and repeated attention.

34.     Ms. Jerez repeatedly expressed her discomfort and made efforts to politely turn Mr. Soto away when he approached her for reasons unrelated to his or her professional duties. Nonetheless, Mr. Soto's unwelcomed physical and verbal harassment continued.

35.     Throughout Ms. Jerez's employment at HRA, all of Ms. Jerez's supervisors and managers at HRA were well-aware of her disability because all temporary workers in her group had documented disabilities and HRA knew that Ms. Jerez had been placed through Goodwill Industries' Affirmative Action Program based on her disability (i.e., panic disorder and attention deficit hyperactivity disorder).

36.     In or around January 2019, Ms. Jerez notified her on-site supervisor, HRA Manager Jerri Whitehead and Director Robin Satchell, that Mr. Soto's harassment triggered her panic

attacks. Ms. Jerez asked for a reasonable accommodation, specifically, to work away from Mr. Soto's presence.

37.     In response, during a team meeting, Ms. Whitehead instructed Mr. Soto to refrain from visiting certain co-workers in their cubicles as it can make them feel uncomfortable.

38.     After Ms. Satchell left HRA in early 2019 and Ms. Whitehead took a leave of absence in the end of March 2019, however, Mr. Soto resumed harassing Ms. Jerez. Mr. Soto again frequently visited Ms. Jerez's cubicle without reason, invaded Ms. Jerez's personal space (e.g., physically standing or sitting very close to Ms. Jerez), stared at her, looked at Ms. Jerez up and down, and tried to engage her in conversations about her personal life.

39.     Mr. Soto's behavior made Ms. Jerez feel extremely uncomfortable and again triggered Ms. Jerez's disability, causing her high stress, anxiety, panic attacks, and making it difficult for her to focus on her work.

40.     Starting in or around May 2019, Ms. Jerez spoke to the managers at HRA several times regarding Mr. Soto's harassment and its effect on her mental and physical health. Specifically, Ms. Jerez spoke to HRA Manager Christopher Barnes on multiple occasions. Moreover, in or around June 2019, Ms. Jerez spoke to HRA Director Tamica Paul about Mr. Soto's harassment and showed medical documentation regarding her disability. Nonetheless, HRA did not investigate or take any action to address Ms. Jerez complaints, and Mr. Soto's harassment continued.

41.     When Ms. Jerez did not reciprocate Mr. Soto's repeated, unwanted attention and reported the harassment to her superiors at HRA, Mr. Soto became increasingly hostile towards Ms. Jerez, demanded that he be able to "keep a close eye" on her, made unreasonable requests, set

unattainable goals, threatened to write her up, screamed at her, and badmouthed her to co-workers at HRA.

42.     Further, Ms. Jerez learned that Mr. Soto was gossiping about Ms. Jerez's personal life and creating false stories to co-workers at HRA. This included discussions about a male houseguest of Ms. Jerez and speculation about her relationship with such houseguest.

43.     Ms. Jerez felt particularly vulnerable in Ms. Whitehead's absence from the office, and feared that she would be unjustly disciplined, marginalized, or even lose her job if she did not comply with Mr. Soto's demands.

44.     On or around September 27, 2019, Ms. Jerez attended a meeting with HRA Manager Michael Morgante, during which she complained of Mr. Soto's continuing harassment and requested that she be allowed to perform her duties away from Mr. Soto. However, it became clear from the meeting that Mr. Morgante condoned Mr. Soto's behavior and had no intention of engaging in a discussion to accommodate Ms. Jerez's request.

45.     On or around September 30, 2019, Ms. Jerez emailed her placement supervisor at Goodwill Industries, Dan Banh, and complained that Mr. Soto was harassing her in an inappropriate manner, and that requested that he address this issue as soon as possible as it was negatively impacting her health.

46.     Mr. Soto continued to harass Ms. Jerez with hostility, improperly injecting himself into Ms. Jerez's professional and personal life.

47.     Three days later, on October 3, 2019, Ms. Jerez again emailed Mr. Banh to complain about Mr. Soto's harassment. She specifically complained that Mr. Soto's harassment triggered her panic attacks, causing her to experience panic, tightness in her chest, palpitations, and difficulty focusing on her work.

48.     On October 3, 2019, Mr. Banh told Ms. Jerez that he would look into her complaints. Mr. Banh then forwarded Ms. Jerez's email to HRA. However, HRA did not do anything to provide Ms. Jerez with a reasonable accommodation or otherwise address Ms. Jerez's complaint, as Mr. Soto was allowed to continue his harassing and threatening behavior towards Ms. Jerez.

49.     Had Defendants provided Ms. Jerez a reasonable accommodation for her disability or granted her request to work without harassment or interference by Mr. Soto, Ms. Jerez would have been able to continue performing her job.For example, Defendants could have reasonably accommodated Ms. Jerez's disability and ensured that she be free from harassment at her workplace by taking steps to prevent Mr. Soto from harassing her or by placing Mr. Soto or Ms. Jerez with a different group or organization.

50.     Goodwill Industries failed to conduct an investigation or take appropriate corrective action to address Ms. Jerez's complaints of harassment. Instead, Goodwill Industries simply forwarded Ms. Jerez's complaint to an on-site supervisor at HRA. Goodwill Industries did not take any steps to grant Ms. Jerez's request to be free from Mr. Soto's harassment at work.

51.     HRA also failed to investigate, take appropriate corrective action to address Ms. Jerez's complaints of harassment, or accommodate Ms. Jerez's request to prevent Mr. Soto from her harassing her at work. No one from HRA spoke to, questioned, or approached Ms. Jerez or any of her co-workers who had personal knowledge of Mr. Soto's workplace harassment. Each time Ms. Jerez complained to the HRA about Mr. Soto's harassment, her complaints were ignored.

52.     About one week later, on October 11, 2019, Ms. Jerez again complained to Goodwill Industries about Mr. Soto's continuing harassment.

53.     On or about October 15, 2019, Goodwill Industries informed Ms. Jerez that it was closing her complaint.

54.     Instead of engaging in an interactive process to find a reasonable accommodation for Ms. Jerez's disability, Defendants ignored her complaints and denied her request.

55.     Within ten days, on or about October 25, 2019, HRA notified Goodwill Industries that it was terminating Ms. Jerez's work placement. In a memorandum, HRA informed Goodwill Industries that it had accommodated Ms. Jerez before but "could no longer do so at this time."

56.     Goodwill Industries notified Ms. Jerez that HRA had terminated her work assignment for "insubordination" and using her cell phone at work. Prior to the time of her termination, however, Ms. Jerez had never received any warning, review, or even a passing comment at HRA regarding her cell phone use, insubordination, or any other problem. Ms. Jerez was not insubordinate and did not use her cell phone during working hours.

57.     Goodwill Industries further notified Ms. Jerez that it would not consider her for any future employment placements or assignments because it did not want to jeopardize its relationships with agencies like HRA.

58.     Although Ms. Jerez immediately informed Goodwill Industries that HRA's reasons for termination were completely false, Goodwill Industries did not investigate HRA's pretextual and false reasons for terminating Ms. Jerez's employment.

59.     Mr. Soto continued to be employed by HRA and Goodwill Industries without investigation, discipline, or other corrective action.

60.     HRA and Goodwill Industries discriminated against Ms. Jerez by subjecting Plaintiff to disparate treatment, including a hostile work environment, on the basis of her sex and disability. HRA and Goodwill Industries failed to prevent unlawful workplace harassment and failed to remedy their hostile work environment.

61.     HRA and Goodwill Industries retaliated against Ms. Jerez for engaging in protected activities by making her work more difficult, increasing scrutiny, and terminating Ms. Jerez's employment after she made multiple complaints about Mr. Soto's workplace harassment and Defendants' hostile work environment, which exacerbated her disability, and requested a reasonable accommodation.

62.     Ms. Jerez suffered from severe emotional distress due to Defendants' failure to correct a hostile work environment. After Ms. Jerez reported workplace harassment to HRA and Goodwill Industries and requested accommodation to be free from such harassment, adverse action was taken against her, ultimately leading to her termination. As a direct result of Defendants' discriminatory and retaliatory actions, Ms. Jerez suffered, and continues to suffer harm.

**UNPAID WAGES**

63.     Throughout her employment with Defendants from on or around December 8, 2016 until October 25, 2019, Plaintiff regularly worked nine (9) hours per day, from 7:00 a.m. to 5:00 p.m., with a one (1) hour lunch break, for five (5) days per week, for a total of forty-five (45) hours every week.

64.     Throughout her employment with Defendants, Plaintiff was paid on an hourly basis. Specifically, from the beginning of her employment with Defendants until in or around June 2017, Plaintiff was paid at a base hourly rate of $15.68. From in or around July 2017 until in or around December 2017, Plaintiff was paid at a base hourly rate of $15.96. From in or around January 2018 until in or around June 2018, Plaintiff was paid at a base hourly rate of $17.00. From in or around July 2018 until in or around December 2018, Plaintiff was paid at a base hourly rate of $18.00. From in or around January 2019 until in or around June 2019, Plaintiff was paid at a

base hourly rate of $19.00. From in or around July 2019 until the end of her employment with Defendants, Plaintiff was paid at a base hourly rate of $20.00.

65. Throughout her employment with Defendants, Plaintiff recorded her work hours by clocking in and out on the punch clock at the offices of HRA.

66. Throughout her employment with Defendants, both HRA and Goodwill Industries had access to Plaintiff's punch clock records.

67. Regardless of Plaintiff's actual hours worked, Defendants paid wages to Plaintiff for only thirty-five (35) hours every week.

68. Throughout her employment with Defendants, Plaintiff was not paid the full and proper amounts of wages for all of her actual hours worked.

69. Throughout her employment with Defendants, Plaintiff was not paid any overtime wages for her hours worked in excess of forty (40) hours per workweek, at a rate not less than one and one-half times her base hourly rate.

70. Throughout her employment with Defendants, Plaintiff did not receive proper notices of pay rate or pay day from Goodwill Defendant at hire or before the changes in pay, as required under the NYLL.

71. Throughout her employment with Defendants, Plaintiff did not receive proper wage statements from Defendants. Specifically, Defendants' wage statements that were provided to Plaintiff failed to accurately reflect her actual hours worked.

72. Defendants knowingly and willfully operated with a policy of failing to pay the full and proper wages to Plaintiff for all hours worked, in violation of the FLSA and/or NYLL.

73. Defendants knowingly and willfully operated with a policy of failing to pay overtime wages to Plaintiff, at a rate not less than one and one-half times her regular hourly rate,

for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and/or NYLL.

74.     Goodwill Defendant knowingly and willfully operated with a policy of not providing proper wage notices to Plaintiff pursuant to the requirements of the NYLL.

75.     Goodwill Defendant knowingly and willfully operated with a policy of not providing proper wage statements to Plaintiff pursuant to the requirements of the NYLL.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
**Discrimination and Retaliation in Violation of the ADA**
***Against Goodwill Defendant***

76.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

77.     Plaintiff is an employee and a protected person within the meaning of the ADA and Goodwill Defendant is a covered employer under the ADA.

78.     Goodwill Defendant violated Plaintiff's statutorily protected rights under the ADA by engaging in discriminatory and retaliatory employment practices.

79.     Goodwill Defendant discriminated against Plaintiff in violation of the ADA by subjecting Plaintiff to disparate treatment, including a hostile work environment, on the basis of her disability. Goodwill Defendant fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory and hostile work conditions, in violation of the ADA.

80.     Goodwill Defendant retaliated against Plaintiff on the basis of her protected activities under the ADA by terminating Plaintiff's employment after she made internal complaints about Defendants' discriminatory practice and hostile work environment.

81.     As a direct and proximate result of Goodwill Defendant's unlawful discriminatory and retaliatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

82.     As a direct and proximate result of Goodwill Defendant's unlawful discriminatory and retaliatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

83.     Goodwill Defendant's unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the ADA, for which she is entitled to an award of punitive damages.

84.     Due to Goodwill Defendant's violations of the ADA, namely, employment discrimination on the basis of disability and retaliation for engaging in protected activities, Plaintiff is entitled to recover from Goodwill Defendant: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

## SECOND CAUSE OF ACTION
### Discrimination and Retaliation in Violation of Title VII
### *Against Goodwill Defendant*

85.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

86.     Plaintiff is an employee and a protected person within the meaning of Title VII and Goodwill Defendant is a covered employer under Title VII.

87.     Goodwill Defendant violated Plaintiff's statutorily protected rights under Title VII by engaging in discriminatory and retaliatory employment practices.

88.     Goodwill Defendant discriminated against Plaintiff in violation of Title VII by subjecting Plaintiff to disparate treatment, including a hostile work environment, on the basis of her sex. Goodwill Defendant fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory and hostile work conditions, in violation of Title VII.

89.     Goodwill Defendant retaliated against Plaintiff on the basis of her protected activities under Title VII by terminating Plaintiff's employment after she made internal complaints about Defendants' discriminatory practice and hostile work environment.

90.     As a direct and proximate result of Goodwill Defendant's unlawful discriminatory and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

91.     As a direct and proximate result of Goodwill Defendant's unlawful discriminatory and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

92.     Goodwill Defendant's unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under Title VII, for which she is entitled to an award of punitive damages.

93.     Due to Goodwill Defendant's violations of Title VII, namely, employment discrimination on the basis of sex and retaliation for engaging in protected activities, Plaintiff is entitled to recover from Goodwill Defendant: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

## THIRD CAUSE OF ACTION
### Discrimination and Retaliation in Violation of the NYSHRL
#### *Against All Defendants*

94. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

95. Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

96. Defendants violated Plaintiff's statutorily protected rights under the NYSHRL by engaging in discriminatory and retaliatory employment practices.

97. Defendants discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to disparate treatment, including a hostile work environment, on the basis of her sex and disability. Defendants fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory and hostile work conditions.

98. Defendants retaliated against Plaintiff on the basis of her protected activities under the NYSHRL by making Plaintiff's work more difficult, increasing scrutiny, and terminating Plaintiff's employment, after she made internal complaints about Defendants' discriminatory practice and hostile work environment and requested reasonable accommodation.

99. As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

100. As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

101. Defendants' unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYSHRL, for which she is entitled to an award of punitive damages.

102. Due to Defendants' violations of the NYSHRL, namely, employment discrimination on the basis of sex and disability and retaliation for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

**FOURTH CAUSE OF ACTION**
**Discrimination and Retaliation in Violation of the NYCHRL**
***Against All Defendants***

103. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

104. Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

105. Defendants violated Plaintiff's statutorily protected rights under the NYCHRL by engaging in discriminatory and retaliatory employment practices.

106. Defendants discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to disparate treatment, including a hostile work environment, on the basis of her sex and disability. Defendants fostered, condoned, accepted, ratified and/or otherwise failed to prevent or to remedy discriminatory and hostile work conditions.

107. Defendants retaliated against Plaintiff on the basis of her protected activities under the NYCHRL by making Plaintiff's work more difficult, increasing scrutiny, and terminating Plaintiff's employment, after she made internal complaints about Defendants' discriminatory practice and hostile work environment and requested reasonable accommodation.

108. As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

109. As a direct and proximate result of Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

110. Defendants' unlawful discriminatory and retaliatory conduct was intentional, malicious, willful, and/or in reckless disregard of Plaintiff's protected rights under the NYCHRL, for which she is entitled to an award of punitive damages.

111. Due to Defendants' violations of the NYCHRL, namely, employment discrimination on the basis of sex and disability and retaliation for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs of bringing this action.

**FIFTH CAUSE OF ACTION**
**Unpaid Wages in Violation of the Fair Labor Standards Act**
*Against City Defendant*

112. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

113. At all times relevant, Plaintiff has been an employee of City Defendant, and City Defendant has been an employer of Plaintiff within the meaning of the FLSA.

114. City Defendant failed to pay Plaintiff the full and proper wages for all hours worked due to time-shaving, including overtime for all hours worked in excess of forty (40) per workweek, as required under the FLSA.

115. City Defendant failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

116. City Defendant's unlawful conduct has been willful and intentional. City Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiff the lawful wages for all hours worked when Defendant knew or should have known such was due. City Defendant has not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

117. As a result of City Defendant's willful violations of the FLSA, Plaintiff is entitled to recover from Defendant: unpaid wages (including overtime), liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the FLSA.

118. Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff should be in the possession and custody of City Defendant. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

**SIXTH CAUSE OF ACTION**
**Unpaid Wages in Violation of the New York Labor Law**
***Against Goodwill Defendant***

119. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

120. At all times relevant, Plaintiff has been an employee of Goodwill Defendant, and Goodwill Defendant has been an employer of Plaintiff within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

121. Goodwill Defendant failed to pay Plaintiff the full and proper wages for all hours worked due to time-shaving, including overtime for all hours worked in excess of forty (40) per

workweek, as required under the NYLL and the supporting New York State Department of Labor Regulations.

122. Goodwill Defendant failed to furnish Plaintiff with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

123. Goodwill Defendant failed to furnish Plaintiff with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

124. Goodwill Defendant failed to properly disclose or apprise Plaintiff of her rights under the NYLL and the supporting New York State Department of Labor Regulations.

125. As a result of Goodwill Defendant's willful violations of the NYLL, Plaintiff is entitled to recover from Defendant: unpaid wages (including unpaid overtime), liquidated

damages, statutory penalties, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

126.    Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff should be in the possession and custody of Goodwill Defendant. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.   An award of damages against Defendants, in an amount to be determined at trial, to compensate Plaintiff for all monetary and/or economic damages, including loss of past and future income, compensation and benefits;

b.   An award of damages against Defendants, in an amount to be determined at trial, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress;

c.   An award of punitive damages against Defendants, in an amount to be determined at trial;

d.   An award of unpaid wages for hours worked, including overtime, due under the FLSA and/or NYLL;

e.   An award of liquidated damages, due under the FLSA and/or NYLL;

f.   Statutory penalties for Defendants' failure to provide Plaintiff with proper wage notices and wage statements, as required by the NYLL;

g.   Pre-judgment and post-judgment interest;

h. An award of fees and costs that Plaintiff has incurred in this action, including but not limited to reasonable attorneys' fees and expert witness fees;

i. A declaratory judgment that the actions, conduct and practices of Goodwill Defendant complained of herein violate the ADA and Title VII;

j. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the NYSHRL and NYCHRL;

k. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the FLSA and/or NYLL;

l. An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein; and

m. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: March 25, 2021                    Respectfully submitted,

**BROWN, KWON & LAM LLP**

By:      /s/ Angela Kwon

Angela Kwon, Esq. (AK1396)
William Brown, Esq. (WB6828)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (718) 971-0326
Fax: (718) 795-1642
akwon@bkllawyers.com
wbrown@bkllawyers.com
*Attorneys for Plaintiff*